UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

ANTHONY GLEN WILSON          CIVIL ACTION NO. 3:15-cv-2405
    LA. DOC #178865
VS.                          SECTION P

                                   JUDGE ROBERT G. JAMES

WARDEN BURL CAIN          MAGISTRATE JUDGE KAREN L. HAYES

## REPORT AND RECOMMENDATION

    Pro se petitioner Anthony Glen Wilson, an inmate in the custody of Louisiana's

Department of Corrections, filed the instant petition for writ of habeas corpus pursuant to 28

U.S.C. §2254 on September 22, 2015. [doc. # 1]. Petitioner attacks his 2007 conviction for

simple burglary, his subsequent adjudication as a fourth felony offender, and the sentence of life

without parole imposed thereon by the Fourth Judicial District Court, Ouachita Parish. This

matter has been referred to the undersigned for review, report, and recommendation in

accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

## Background

    The underlying facts in this case have been set forth by the Louisiana Second Circuit

Court of Appeal as follows:

> On the morning of September 9, 2004, the owner of a Ford Explorer discovered
> the defendant sleeping in his vehicle. The rear passenger window had been broken
> out of the locked vehicle. The owner called the police. Two deputies responded;
> they woke the defendant and asked him to get out of the vehicle. Found in the
> vehicle was a black bag which did not belong to the owner of the Explorer; it
> contained bolt cutters and a black ski mask. According to the vehicle owner, the
> glove box had been opened and gone through. A bottle of cologne and some
> change were missing from the vehicle. The cologne was found either on the
> defendant or in his bag, while the missing coins were found in the bag.

> The defendant was arrested and charged with simple burglary. Following a jury
> trial in July 2007, he was convicted as charged. He was sentenced to 12 years at
> hard labor, the maximum sentence for the offense. A motion to reconsider

> sentence was denied. Subsequently, the state charged the defendant as a multiple
> offender. After a hearing, he was adjudicated a fourth felony offender and
> sentenced to life imprisonment at hard labor without benefit of parole, probation
> or suspension of sentence. A motion to reconsider sentence was denied.

*State v. Wilson*, 44,586 (La. App. 2 Cir. 10/28/09), 26 So. 3d 210.

He appealed his conviction and sentences. *Id.* His court-appointed appellate counsel

argued nine assignments of error: (1) insufficiency of the evidence; (2) erroneous admission of

coins into evidence; (3) trial court erred when it failed to instruct the jury that it could accept part

of a witness' testimony and reject other parts; (4) ineffective assistance of counsel for failure to

object to the jury instructions; (5) ineffective assistance of counsel for failure to request a special

charge on voluntary intoxication; (6) ineffective assistance of counsel for failure to object to the

fact that petitioner was absent when jurors were questioned about exposure to news articles; (7)

improper prosecutorial vindictiveness; (8) trial court erred in failing to set aside the sentence

imposed on the burglary conviction; and (9) excessive sentence of the simple burglary sentence

and habitual offender sentence. *Id.* The Second Circuit Court of Appeal affirmed Petitioner's

conviction and sentence on October 28, 2009. *Id.* at 224. In pleadings dated November 24, 2009,

Petitioner sought further direct review in the Louisiana Supreme Court. [doc. # 1-1, p. 12]. On

January 28, 2011, his writ application was denied without comment. *State v. Wilson*, 2009-2655

(La. 1/28/11), 56 So. 3d 973.

On December 22, 2011, he filed an application for post-conviction relief in the Fourth

Judicial District Court arguing four claims of ineffective assistance of counsel. [doc. # 1-2, p.

23]. On June 22, 2012, his application was denied. *Id.* at 59. On July 25, 2012, Petitioner filed a

writ application and was granted in part and denied in part by the Second Circuit Court of

Appeals on September 25, 2014. [doc. # 1-1, p. 61]. The Appellate Court denied writs with

2

regard to one of Petitioner's claims for ineffective assistance of counsel and granted the remaining claims that were not already raised on appeal. *Id.* On remand the trial court denied Petitioner's remaining ineffective assistance of counsel claims on May 15, 2013. *Id.* at 63. Petitioner filed for and was denied a supervisory writ of review by the Second Circuit Court of Appeal on July 2, 2014 and by the Louisiana Supreme Court on July 31, 2015. *Id.* at 65; *State ex rel. Wilson v. State*, 2014-1658 (La. 7/31/15), 174 So. 3d 658.

Petitioner filed the instant petition on September 22, 2015. [doc. # 1]. He raises the following claims: (1) insufficient evidence; (2) trial court erred in the admission of coins into evidence; (3) trial court erred in giving an incomplete jury charge and his counsel was ineffective for not objecting to the incomplete charge and in not requesting a special jury charge on voluntary intoxication; (4) trial court erred in conducting hearing without the presence of Petitioner and that his trial counsel was ineffective by not objecting to the proceeding in his client's absence; (5) and (6) trial court erred in denying his motion to compel answers to a bill of particulars regarding the motives for the filing of the habitual offender bill of information and in failing to grant his motion to quash the habitual offender bill of information due to prosecutorial vindictiveness; (7) trial court erred in failing to vacate the originally imposed sentence of twelve years at hard labor before imposing the life sentence after finding Petitioner to be a habitual offender; (8) excessive sentence of twelve years on simple burglary conviction; (9) excessive life sentence on habitual offender conviction; (10) ineffective assistance of counsel for failure to file a motion to Quash the bill of information due to State's unreasonable delay in prosecuting the Petitioner; (11) ineffective assistance of counsel for failure to object and file a motion to quash the defective bill of information; (12) ineffective assistance of counsel for failure to investigate and proffer evidence to show that his client was prejudiced by the trial court's denial of his

3

motion for a change of venue; and (13) ineffective assistance of counsel for failure to challenge the planting of evidence used at trial. *Id.* The matter is now before the Court.

## Law and Analysis

### I.    Standard of Review – 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs *habeas corpus* relief. The AEDPA limits how a federal court may consider *habeas* claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)). "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 740. Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

4

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## II.     Petitioner's Claims

## A.     Claim One: Insufficient Evidence

In claim one, Petitioner argues that the State did not prove the elements of simple battery, particularly that he had intent to commit theft within the vehicle. [doc. # 1-1, p. 19]. When a habeas petitioner asserts that the evidence presented was insufficient to support his conviction, the limited question is whether the state appellate court's decision to reject that claim was an objectively unreasonable application of the clearly established federal law set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Williams v. Puckett*, 283 F.3d 272, 278-79 (5th Cir. 2002). A conviction is based on sufficient evidence if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. The Jackson inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993). Thus, a conviction may rest on sufficient evidence "even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

Here, invoking *Jackson*, the Second Circuit Court of Appeal began review by referencing the pertinent definition of simple burglary found in LA. REV. STAT. § 14:62(A):

> Simple burglary is the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, or any cemetery, with the intent to commit a felony or any theft therein. In addition to the defendant's presence by

means of an unauthorized entry, the prosecution must prove beyond a reasonable doubt that the intruder had the specific intent to commit a theft or felony therein in order to support a conviction of simple burglary. *State v. Bell*, 42,394 (La. App. 2d Cir.12/5/07), 972 So.2d 1207.

*Wilson*, 26 So. 3d at 215. The appellate court then set forth the relevant testimony and evidence

presented at trial:

> The state presented the testimony of the vehicle owner, a responding deputy, and an evidence officer for the sheriff's office. The owner stated that he locked the Explorer the night before. When he found the defendant—a complete stranger—asleep in the vehicle the next morning, one of the windows had been broken out. There was a black bag in the Explorer that did not belong to the owner. The bag contained bolt cutters and a ski mask; the deputy testified that these items are tools commonly used in burglaries. According to the owner, the glove box had been opened and rifled. A bottle of cologne and some change that he kept in the console were missing. The cologne was found either in the defendant's pocket or in his bag. The change was eventually found in the defendant's bag.[1]

* * *

> As to the defendant's claim of voluntary intoxication as a defense, the only evidence of intoxication was the defendant's self-serving statement to the police that he had been drinking. The deputy who arrested the defendant testified at trial that he had had the opportunity to observe persons under the influence of alcohol or drugs. According to the deputy's testimony, the defendant was coherent, able to answer questions, and appeared to understand his rights when they were read to him. The defendant did not testify at trial or otherwise present evidence of his alleged intoxication.

*Id.* at 216. Applying Jackson, the Second Circuit held that the evidence presented was sufficient

to support the defendant's conviction. *Id.* The court reasoned:

> The defendant cites *State v. Jacobs*, 504 So.2d 817 (La.1987), and *State v. Wright*, *supra*, in support of his argument that the evidence does not exclude every reasonable hypothesis of innocence. However, in both of the cited cases, there was no evidence of displacement of items in the houses into which those defendants

---

[1] The owner testified that the cologne was discovered in the bag and kept by the police. The deputy stated that it was recovered from the defendant's back right pocket and returned to the owner. These minor discrepancies are irrelevant; in either case, the defendant had put the cologne in a place over which he exercised control in anticipation of his departure from the vehicle.

made unauthorized entries. Also, in *Wright*, *supra*, there was no evidence of forced entry. Here the owner testified that a window in the locked vehicle had been broken out, that the vehicle had been rifled, and that items had been displaced.

* * *

The circumstances do not establish that the defendant was intoxicated at the time of the offense and that any such intoxication precluded the presence of the specific intent required in simple burglary. To the contrary, the defendant's carrying of burglar tools, breaking the back car window, rifling through the console and glove box, and taking the money and cologne, all indicate that the defendant did have the specific intent to commit a theft.

Viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found beyond a reasonable doubt that the defendant made an unauthorized entry into the Explorer with the specific intent to commit a theft.

*Id.* A review of the trial record shows that the appellate court's application of Jackson was objectively reasonable. This claim is without merit and should be DENIED.

**B.**   **Claim Two: Admission of Coins**

Wilson's next claim asserts that the trial court erred in admitting into evidence the envelope containing the fifty-eight cents in change, because the State failed to lay a proper foundation. The Court, however, can discern no constitutional allegation. "In habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law." Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998); *see also Derden v. McNeel*, 978 F.2d 1453, 1458 (5th Cir. 1992) ("Errors of state law, including evidentiary errors, are not cognizable in habeas corpus."); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("In conducting a federal habeas analysis, it is irrelevant whether the evidence was correctly admitted pursuant to state law."). Because Petitioner fails to allege any actual constitutional violation, this claim is not cognizable.

To be sure, "a state trial court's evidentiary rulings will mandate habeas relief when errors are so extreme that they constitute a denial of fundamental fairness. Thus, only when the

wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted." *Id.* at 862 (citations omitted).

In the instant case, both the state district court and the intermediate appellate court gave careful consideration to whether the coins were admissible. The appellate court gave detailed and persuasive written reasons as to why the coins were in fact admissible. *See Wilson*, 26 So. 3d at 217. Petitioner has failed to establish that those rulings were erroneous, much less so egregiously erroneous as to render his trial fundamentally unfair. With that in mind, however, even if Petitioner could show that the photographs were erroneously admitted under Louisiana law, the Court cannot say that the admission of the coins played a crucial, critical, or highly significant role in Petitioner's conviction. Thus, the Court recommends that this claim be DENIED.

**C.**     **Claim Three: Incomplete Jury Charge**

Wilson argues that the trial court erred in giving an incomplete jury charge and that his counsel was ineffective for not objecting to the incomplete charge and in not requesting a special jury charge on voluntary intoxication. [doc. # 1-1, p. 29]. Specifically, Wilson contends that the court did not instruct the jury that it could accept part of the testimony of a witness and reject other parts of the testimony. *Id.*

1.     Jury Instruction.

Petitioner argues that the trial judge erred when he instructed the jury that,

If you believe there is a witness in the case that has willfully and deliberately testified falsely to any material fact, then I charge you that you are justified in disregarding the entire testimony of such a witness, if there be one, as proving nothing and is unworthy of belief. To state this rule another way, you as jurors have the right to accept as true or to reject as untrue the testimony of any witness.

*Id.*; [doc. # 12-5, p. 90]. Specifically, Wilson contends that the court did not instruct the jury that it could accept part of the testimony of a witness and reject other parts of the testimony. *Id.*

It is well settled that improper jury instructions in state criminal trials do not generally provide a basis for federal habeas relief. *McGuire*, 502 U.S. at 67. In order for an erroneous jury instruction by a state court to warrant federal habeas relief, the petitioner must show not only that the instruction given was erroneous, but also that it resulted in prejudice of a magnitude so severe that his due process right was violated. *Cupp v. Naughten*, 414 U.S. 141 (1973); *Sullivan v. Blackburn*, 804 F.2d 885 (5th Cir. 1986). The Fifth Circuit determined that prejudice has been interpreted in the precise context of a jury charge issue to mean "showing not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Skelton v. Whitley*, 950 F.2d 1037, 1046 (5th Cir. 1992) (*citing United States v. Frady*, 456 U.S. 152, 171 (1982)).

Petitioner merely asserts, in conclusory statements, that he was prejudiced by the improper jury instruction. However, he fails to demonstrate that the instruction in question rendered the entire trial fundamentally unfair, and therefore caused a violation of his constitutional rights. Moreover, the appellate court correctly noted that, "[t]he jury instructions are almost identical to similar instructions ruled to be acceptable. *See State v. Prestridge*, 399 So.2d 564 (La.1981); *State v. Walters*, 582 So.2d 317 (La. App. 4th Cir. 1991), *writ denied*, 584 So.2d 1171 (La. 1991). There is no basis for asserting that the instructions were prejudicial." Accordingly, the undersigned can find no basis for holding that the trial court's instruction was constitutionally deficient; therefore, Petitioner's claim should be DENIED.

2.      Ineffective Assistance of Counsel

Wilson also argues that his trial counsel should have objected to the incomplete jury charge and requested an instruction regarding the defense of voluntary intoxication. [doc. # 1-1,

p. 29]. To prevail on a claim of ineffective assistance of counsel, a defendant must show both (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that the ineffectiveness of counsel prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 686–87 (1984).

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2254. *See Clark v. Thaler*, 673 F.3d 410 (5th Cir. 2012); *Amos v. Thornton*, 646 F.3d 199 (5th Cir. 2011). Substandard advice of counsel rises to a constitutional violation only if the substandard conduct deprives the petitioner of his constitutional right to a fair trial or deprives the petitioner of some other constitutional right. *Strickland v. Wash.*, 466 U.S. 668, 686-87 (1984). To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's actions fell below an objective standard of reasonableness and that the ineffectiveness of counsel prejudiced him. *Id.*

If the petitioner does not make a sufficient showing as to one prong of the test, the other prong need not be considered. *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997). The prongs of the test also need not be analyzed in any particular order. *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997). Furthermore, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

In applying the first prong of *Strickland*, a court should presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. *See Strickland*, 466 U.S. at 689-90. The petitioner must show that the performance of counsel fell "outside the wide range of professionally competent assistance." *Id.* at 690; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994).

10

To establish prejudice, the second prong, the petitioner must demonstrate that counsel's actions "were so serious as to render the proceedings unreliable and fundamentally unfair." *U.S. v. Saenz-Forero*, 27 F.3d 1016, 1021 (5th Cir. 1994); *Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984). Unreliability and unfairness do not result "if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993); *see also Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995). Accordingly, counsel cannot be ineffective for failing to raise a meritless claim, *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995), and prejudice generally exists only if the defendant demonstrates that he would have received less jail time. *U.S. v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

Here, with regard to the challenged jury instruction, the Court notes that counsel is not required to make futile motions or objections. *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). With that in mind, any objection to the jury instruction would have been futile because, as explained above, the jury instruction was entirely consistent with Louisiana law. See *Prestridge*, 399 So.2d at 577. Consequently, counsel did not render ineffective assistance by failing to object to the alleged incomplete jury instructions.

With regard to the voluntary intoxication instruction, the Court finds that Petitioner's counsel did not render ineffective assistance of counsel. As the appellate court noted, "[t]he defendant did not introduce evidence of his alleged intoxication. Therefore, a jury charge on the defense of voluntary intoxication in the instant case would not have been appropriate. *See State v. Guillory*, 2000–00386 (La. App. 3d Cir. 11/2/00), 773 So.2d 794, *writ denied*, 2000–3334 (La.11/9/01), 801 So.2d 362." *Wilson*, 26 So. 3d 210, 219. Moreover, the prosecution elicited testimony to the contrary. Deputy Renfro testified that Wilson appeared coherent and appeared to

11

understand his rights. [doc. 12-5, pp. 58, 64]. Accordingly, as counsel was not ineffective for failing to object to the court's jury instruction and for failing to request a jury instruction on voluntary intoxication, these two claims of ineffective assistance should be DENIED.

**D.**     **Claim Four: Petitioner's Absence From Hearing**

Petitioner alleges that the trial court erred in conducting a hearing without the Petitioner being present and that his counsel was ineffective for failing to object. [doc. # 1-1, p. 16]. Although it is not known when Wilson entered the courtroom, he was absent when the trial judge first addressed the potential jurors and present when the trial judge introduced the lawyers and the Petitioner to the veniremen before the lawyers commenced voir dire questioning. [doc. # 12-3, pp. 3, 29]. During the time Petitioner's presence in the courtroom was unaccounted for, the trial judge addressed the potential jurors concerning a newspaper article in regards to Petitioner's case. *Id.* at 3-29.

As an initial matter, to the extent Wilson complains that the state trial court violated Louisiana law in proceeding with the trial in his absence, the alleged violation of state laws does not merit federal habeas corpus review or relief. *Accord Swarthout v. Cooke*, 562 U.S. 216, 218 (2011) (federal habeas review does not lie for errors of or in applying state law); *see also*, *McGuire*, 502 U.S. at 67–68; *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Instead, federal habeas review is limited to reviewing whether a state prisoner is being held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal habeas corpus court, therefore, will not grant relief unless errors in a state court proceeding resulted in the "denial of fundamental fairness" under the Due Process Clause. *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998) (*citing Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir. 1983)); *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (habeas

12

review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right).

Considering federal standards, the Sixth Amendment establishes a criminal defendant's right to be present at trial and "to be confronted with the witnesses against him . . ." U.S. Const. amend. VI; *Illinois v. Allen*, 397 U.S. 337, 338 (1970); *Clark v. Scott*, 70 F.3d 386, 388 (5th Cir. 1995). This right is not absolute and can be waived by the voluntary absence of the defendant.[2] *Clark*, 70 F.3d at 388 (*citing Taylor v. United States*, 414 U.S. 17, 19–20 (1973)). "[t]he Supreme Court has declined to extend automatic reversal of a conviction to violation of a defendant's right to be present at all critical stages of the trial," and the Fifth Circuit "has consistently required a showing of prejudice to the defendant to constitute reversible error upon a defendant's absence from any part of the jury selection process."  United States v. Thomas, 724 F.3d 632, 641 (5th Cir. 2013).

Here, there is no indication that any objection was made.[3] The record does not disclose why Wilson was absent from court or whether Wilson missed court proceedings because of choice, illness, inadvertence, state-imposed security concerns, coercive state action, or some other reason. However, this is of no significance since Wilson has not shown a constitutional violation flowing from his absence during the summary dismissal of potential jurors.

---

[2] Although the Fifth Circuit has held that a federal court must engage in an on-the-record balancing test before proceeding with a criminal trial against the absent defendant, *see United States v. Benavides*, 596 F.2d 137, 138–39 (5th Cir. 1979), the Court has resolved that it is "powerless to impose this test on state courts in federal habeas actions." *Clark*, 70 F.3d at 390.

[3] LA. C. CR. P. art 841, Louisiana's contemporaneous objection rule, prohibits appellate review of errors which were not timely objected to at trial. The United States Supreme Court has determined that the violation of a state's contemporaneous objection rule provides sufficient grounds to support dismissal of a subsequent federal habeas petition as procedurally defaulted. *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 (1984).

The core concern of the right to courtroom presence is that a defendant's "absence might frustrate the fairness of the proceedings . . . ." *Faretta v. California*, 422 U.S. 806, 820 n.15 (1975). Due process does not require the defendant's presence when it would be useless or only slightly beneficial. *See Snyder v. Massachusetts*, 291 U.S. 97 (1934). When there is no indication that the defendant "could have done [anything] had [he] been at the [hearing] nor would [he] have gained anything by attending[,]" a defendant's absence does not violate his due process rights. *Kentucky v. Stincer*, 482 U.S. 730, 747 (1987) (alterations in original). In such a case, his "'presence would be useless, or the benefit but a shadow. . . .'" *Id.* at 745 (*quoting Snyder*, 291 U.S. at 106–07).

The record clearly supports the factual findings made by the state appellate court. Petitioner has not presented any evidence that but for counsel's failure to object to Wilson's absence, the result of the proceedings would have been different. *See Hill*, 474 U.S. at 58–59. Petitioner has failed to demonstrate that he was prejudiced by his absence or his counsel's failure to object to his absence. Accordingly, these claims should be DENIED.

**E.     Claims Five and Six: Prosecutorial Misconduct**

Petitioner contends that the trial court erred in denying his motion to compel answers to a bill of particulars regarding the motives for the filing of the habitual offender bill of information. [doc. # 1-1, p. 34]. Petitioner also claim that the trial court erred in failing to grant his motion to quash the habitual offender bill of information due to prosecutorial vindictiveness. *Id.* Both claims stem from Petitioner's belief that the prosecution's decision to seek enhancement of his sentence was motivated by actual vindictiveness. *Id.* at 34-36.

 A vindictive prosecution—one in which the prosecutor seeks to punish the defendant for exercising a protected statutory or constitutional right—violates a defendant's Fifth Amendment

right to due process. *United States v. Goodwin*, 457 U.S. 368, 372 (1982). A defendant establishes vindictive prosecution either (1) by producing evidence of actual vindictiveness, or (2) by demonstrating circumstances that reveal a sufficient likelihood of vindictiveness to warrant a presumption of vindictiveness *Id.* at 376. A prosecutor rebuts the presumption by showing objective reasons for the charges. The prosecutor in this case gave the following explanation:

> At no time during the prosecution of this case was the prospect that this defendant may be a murder suspect ever brought up by the state. In fact, whenever this was eluded to, it was brought up by the defense. If the defendant had taken the stand to testify in his own defense (and he did not) and had the State utter even the hint that this defendant may have been a suspect in any kind of criminal activity, the defense would have cried foul and demanded a mistrial. The defense would have been within their rights to do so. The trial court would have rightfully granted a mistrial.
>
> The truth of the matter is that the defendant is a bad actor as set forth by his criminal history. The State of Louisiana chose to treat him as what he is—a habitual offender. The trial court has within its power to do a downward departure from what the maximum penalty could be. The trial court chose not to.

[doc. # 12-7, p. 80].

The prosecutor clearly explained that the amended indictment was based on Petitioner's previous convictions for attempted distribution of cocaine, attempted simple burglary, simple burglary, unauthorized entry of a place of business and possession of stolen things. Thus, even if the court were to find this case presented a reasonable likelihood of vindictiveness, the prosecutor's explanation rebuts the presumption. Wilson has not proffered any evidence showing or tending to show that the prosecutor's filing a habitual offender bill against Petitioner resulted from actual vindictiveness. The record is devoid of objective evidence of prosecutorial vindictiveness and, if any presumption of vindictiveness arose, it was rebutted by the State's explanation. The Louisiana Court of Appeals's rejection of this claim was not contrary to or an

unreasonable application of clearly established federal law.

**F.      Claims Seven, Eight and Nine: Excessive Sentence**

Petitioner's next claims allege excessive sentences for his sentence of twelve years on his simple burglary conviction and life on his habitual offender convictions. [doc. # 1-1, p. 36]. Additionally Petitioner claims that the trial court erred in failing to vacate the originally imposed sentence of twelve years at hard labor before imposing the life sentence after Petitioner was found to be a habitual offender. *Id.*

1. Vacate Original Sentence

When the court adjudicates a defendant as a habitual felony offender, "the court shall sentence him to the punishment prescribed in this Section, and shall vacate the previous sentence if already imposed, deducting from the new sentence the time actually served under the sentence so vacated." LSA–R.S. 15:529.1(D)(3). Where it is obvious that the trial court intended to increase the substantive sentence, and correction of the illegal sentence does not involve the exercise of sentencing discretion, the appellate court may amend to correct, without remanding for resentencing. *State v. George*, 39,959 (La. App.2d Cir.10/26/05), 914 So.2d 588.

In this case, as the Louisiana Appellate Court noted, it is clear that the trial court intended to increase the substantive sentence from twelve years imprisonment to life imprisonment, in accordance with the habitual offender statute. *Wilson*, 26 So. 3d at 222. The Appellate Court corrected the illegal sentence without remanding to the trial court for sentencing. *Id.* Thus, the original twelve year sentence has been vacated.

2. Excessive Sentence Claims for Twelve Year and Life Sentences

Federal habeas courts must accord wide discretion to a state trial court's sentencing decision, and claims arising out of the decision are generally not constitutionally cognizable.

16

*Haynes v. Butler*, 825 F.2d 921, 923 (5th Cir. 1987) (citations omitted). However, relief may be required where a petitioner can show that his sentence is outside the statutory limits or is wholly unauthorized by law. *Id.* at 923-24. If a sentence is within the statutory limits, as here, a petitioner must show "that the sentencing decision was wholly devoid of discretion or amounted to an 'arbitrary or capricious abuse of discretion' . . . or that an error of law resulted in the improper exercise of the sentencer's discretion and thereby deprived the petitioner of his liberty." *Id.* at 924 (citations omitted).

Petitioner was convicted of simple burglary and originally sentenced to 12 years imprisonment at hard labor. However, as mentioned above, the twelve year sentence was already vacated by the Appellate Court. See *Wilson*, 26 So. 3d at 222. Petitioner also complains that his life sentence imposed under the habitual offender statute is excessive. [doc. # 1-1, p. 40]. Petitioner contends that the court failed to consider the culpability of the offender, the gravity of the offense, and the circumstances of the case in arriving at the sentence imposed. *Id.* On direct appeal, the Appellate Court rejected that claim, holding:

> The defendant claims that the trial court erred in failing to acknowledge and consider his arguments that it could deviate below the statutorily mandated sentence set forth in the Habitual Offender Law and in imposing a cruel, unusual, and excessive sentence in violation of the Eighth Amendment to the United States Constitution and La. Const. art. 1, § 20. The defendant in this matter was proven to have five prior felony convictions. The present offense was his sixth felony conviction. One prior conviction, attempted distribution of cocaine, was a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for 10 years or more. A prior conviction was for simple burglary, punishable by imprisonment for 12 years or more. Also, the present conviction is for simple burglary. Therefore, the requirements of La. R.S. 15:529.1(A)(1)(c)(ii) were satisfied and resulted in the imposition of the mandatory sentence of life imprisonment without benefit of parole, probation, or suspension of sentence. Although the prior felonies and the present offense do not involve crimes of violence, the defendant has an extensive criminal history including convictions for numerous serious felonies. This demonstrates that he is the type of recidivist that the Habitual Offender Law was designed to punish and deter.

> In addition to the crimes used as predicates for the habitual offender bill of information, the defendant had numerous felony and misdemeanor convictions and charges not contained in the bill of information. In 1978, when the defendant was 19 years old, he was convicted in California of committing a lewd act with a minor under the age of 14. His arrest record in California includes vehicular theft, receiving stolen property, possession of a controlled substance, and burglary. The defendant's Louisiana criminal history includes a conviction for disturbing the peace and numerous other arrests. The felony convictions forming the basis for the habitual offender bill of information include attempted distribution of cocaine, attempted simple burglary, simple burglary, unauthorized entry of a place of business, and illegal possession of stolen things.
>
> The defendant has failed to show that he falls within those rare circumstances in which a downward departure from the mandatory life sentence is warranted. The defendant has been given numerous opportunities for rehabilitation and has chosen to continue a life of serious crime. Given the defendant's extensive criminal history, the sentence in this case does not shock the sense of justice and does not constitute a needless and purposeless imposition of pain and suffering.

*Wilson*, 26 So. 3d at 223-24.

To the extent petitioner is arguing that his sentence is excessive under Louisiana law, that claim is not cognizable in this federal proceeding. Federal habeas corpus relief is available only for violations of federal constitutional law and, therefore, this Court does not sit to review alleged errors of state law. *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998). Accordingly, this Court will not review the state court's findings regarding the constitutionality of petitioner's sentence under state law.

Further, to the extent that petitioner is claiming that his sentence is excessive under the Eighth Amendment of the United States Constitution, his claim is without merit. In *Solem v. Helm*, 463 U.S. 277, 284 (1983), the Supreme Court held that the Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." "This constitutional principle is tempered, however, by the corollary proposition that the determination of prison sentences is a legislative prerogative that is primarily within the

province of legislatures, not courts." *United States v. Gonzales*, 121 F.3d 928, 942 (5th Cir. 1997) (*citing Rummel v. Estelle*, 445 U.S. 263, 274–76 (1980)). "[C]ourts must grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." *Gonzales*, 121 F.3d at 942 (quotation marks omitted). "[T]herefore, it is firmly established that successful challenges to the proportionality of punishments should be exceedingly rare." *Id.* (quotation marks omitted).

Interpreting *Solem* in light of intervening precedent, the United States Fifth Circuit Court of Appeals has set forth the framework to be used when analyzing a claim that a sentence is excessive:

> [W]e will initially make a threshold comparison of the gravity of [petitioner's] offenses against the severity of his sentence. Only if we infer that the sentence is grossly disproportionate to the offense will we then . . . compare the sentence received to (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions.

*McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992). Moreover, when evaluating the excessiveness of a sentence imposed under a habitual offender statute, a court must be mindful that the "sentence is imposed to reflect the seriousness of [petitioner's] most recent offense, not as it stands alone, but in the light of his prior offenses." *Id.*

The Fifth Circuit has noted that *Rummel v. Estelle*, 445 U.S. 263 (1980), "establishes a benchmark for disproportionate punishment under the Eighth Amendment." *Gonzales*, 121 F.3d at 943. In *Rummel*, the Supreme Court upheld a petitioner's sentence to life imprisonment for obtaining $120.75 under false pretenses. The sentence was imposed under a Texas recidivist statute and took into account petitioner's prior convictions for fraudulent use of a credit card and passing a forged check. The Fifth Circuit observed:

> We acknowledge that the distinction between constitutional sentences and grossly

19

> disproportionate punishments is an inherently subjective judgment, defying bright
> lines and neutral principles of law. Nevertheless, we can say with certainty that
> the life sentence approved in *Rummel* falls on the constitutional side of the line,
> thereby providing a litmus test for claims of disproportionate punishment in
> violation of the Eighth Amendment.

*Gonzales*, 121 F.3d at 943 (footnote omitted).

In this case, Petitioner's predicate convictions were for attempted distribution of cocaine, attempted simple burglary, simple burglary, unauthorized entry of a place of business and illegal possession of stolen things. Moreover, Petitioner's present habitual offender sentence is imposed with respect to a conviction for simple burglary. In light of those facts, and considering the *Rummel* finding that a life sentence was not excessive when imposed for a nonviolent offense where the habitual offender had two prior nonviolent offenses, all of which were relatively minor offenses, this Court has no hesitation in concluding that petitioner's life sentence as a habitual offender under these circumstances, which are considerably more grave, was not grossly disproportionate. In that the sentence is not grossly disproportionate, this Court's "inquiry is finished." *Gonzales*, 121 F.3d at 942. Because petitioner's sentence is not so excessive as to violate the United States Constitution, this claim must fail. For these reasons, Petitioner's sentence was not unconstitutionally excessive, and his claims on these grounds should be DENIED.

## G.    Claims Ten, Eleven, Twelve and Thirteen:

In Petitioner's last four claims, he alleges that his trial counsel was ineffective for the following reasons: (1) failure to file a Motion to Quash the bill of information due to the State's unreasonable delay in prosecuting Petitioner; (2) failure to object and file a Motion to Quash the defective bill of information; (3) failure to investigate and proffer evidence to show that his client was prejudiced by the trial court's denial of his Motion for a Change of Venue; and (4) failure to

20

challenge the planting of evidence used at trial. [doc. # 1-1, pp. 45-60].

As mentioned above, to prevail on a claim of ineffective assistance of counsel, a defendant must show both (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that the ineffectiveness of counsel prejudiced him. *Strickland*, 466 U.S. at 686–87. Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2254. *See Clark v. Thaler*, 673 F.3d 410 (5th Cir. 2012); *Amos v. Thornton*, 646 F.3d 199 (5th Cir. 2011). Substandard advice of counsel rises to a constitutional violation only if the substandard conduct deprives the petitioner of his constitutional right to a fair trial or deprives the petitioner of some other constitutional right. *Strickland*, 466 U.S. 668, 686-87 (1984). To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's actions fell below an objective standard of reasonableness and that the ineffectiveness of counsel prejudiced him. *Id.*

If the petitioner does not make a sufficient showing as to one prong of the test, the other prong need not be considered. *Tucker*, 115 F.3d at 281. The prongs of the test also need not be analyzed in any particular order. *Goodwin*, 132 F.3d at 172 n.6 (5th Cir. 1997). Furthermore, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green*, 160 F.3d at 1042-43 (5th Cir. 1998).

In applying the first prong of *Strickland*, a court should presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. *See Strickland*, 466 U.S. at 689-90. The petitioner must show that the performance of counsel fell "outside the wide range of professionally competent assistance." *Id.* at 690; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994).

To establish prejudice, the second prong, the petitioner must demonstrate that counsel's actions "were so serious as to render the proceedings unreliable and fundamentally unfair."

21

*Saenz-Forero*, 27 F.3d at 1021; *Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984). Unreliability and unfairness do not result "if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Fretwell*, 506 U.S. at 372; *see also Mangum*, 67 F.3d at 84. Accordingly, counsel cannot be ineffective for failing to raise a meritless claim, *Hargett*, 61 F.3d at 415 n.5, and prejudice generally exists only if the defendant demonstrates that he would have received less jail time. *Grammas*, 376 F.3d at 436.

 1. Motion to Quash Bill of Information Due to Unreasonable Delay

 Petitioner first claims that his counsel assistance was ineffective for failing to "file a motion to quash prosecution based upon the fact that the State exceeded the time limitation for filing of new charges upon dismissal of prosecution as founded in LA. C. CR. P. 576." [doc. # 1-1, p. 45]. Article 576 provides:

> When a criminal prosecution is timely instituted in a court of proper jurisdiction and the prosecution is dismissed by the district attorney with the defendant's consent, or before the first witness is sworn at the trial on the merits, or the indictment is dismissed by a court for any error, defect, irregularity, or deficiency, a new prosecution for the same offense or for a lesser offense based on the same facts may be instituted within the time established by this Chapter or within six months from the date of dismissal, whichever is longer.

 Petitioner contends that because the prosecution was first initiated in 2004 and dismissed, the State violated Article 576 by exceeding the time for filing of new charges. However, Petitioner does not support this argument with any evidence that prosecution was ever initiated in 2004. A review of the trial record reveals that Petitioner was arrested for simple burglary on September 9, 2004. [doc. # 12-1, p. 47]. On September 30, 2004, before Petitioner appeared for an arraignment, the District Attorney's Office declined prosecution pending further investigation. *Id.* at 50. It appears that the Petitioner has confused the prosecution's decision to decline prosecution on September 30, 2004, with dismissal. The initial bill of information filed in this

matter was on April 16, 2007, which is within the four year time limit imposed by LA. C. CR. P. art 572. Thus, counsel was not ineffective for failing to file a meritless motion. *See Hargett*, 61 F.3d at 415 n.5.

2. Motion to Quash Bill of Information Due to Defect

Petitioner claims that his counsel assistance was ineffective for failing to object or file a motion to quash the bill of information. Petitioner alleges that the bill of information was fatally defective because "it charges the petitioner with simple burglary of a 1991 Ford Explorer, without it belonging to an actual person/victim." [doc. # 1-1, p. 51].

The law is well-settled that a state indictment or bill of information is not a matter for federal habeas corpus relief unless the charging document was so defective that the convicting court had no jurisdiction and that, under no circumstances, could a valid state conviction result from the facts provable thereunder. *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir.1985). Such a determination is made by looking to the law of the state where the bill of information was issued. *Id.* In this regard, the Louisiana Code of Criminal Procedure provides that "[t]he indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged." LA. C C. P. art. 464. In identifying the victim when an offense is committed against a person, the indictment "shall state the true name of the victim," but if the name is not known, "may describe him as far as possible." LA. C C. P. art. 473. The Official Comments to this article note that a primary concern in identifying a victim is "protection of the defendant's constitutional right to be informed of the nature and cause of the accusation against him, . . . adequate to support a plea of double jeopardy." In addition, the Comments note that this article "stresses 'identification,' rather than a mere naming of the victim," and a bill of particulars may be requested by either the defendant or by the trial court so as to provide "more specifically

the nature and cause of the charge." LA. C CR. P. art. 484.

In the instant case, the Bill of Information made reference to the date and place of the charged offense and the statutes that the petitioner was charged with having violated. Although the victim's name was absent from the charging document, Petitioner was adequately informed of the nature and cause of the accusation against him, particularly when Petitioner received an open file discovery containing police reports with the identity of the victim. [doc. # 12-1, p. 47]. Further, any challenge to the Bill of Information by Petitioner's attorney would have resulted, at most, in an amendment to the charging document so as to cure the noted deficiency, thereby achieving, if anything, a mere delay in the trial and resulting in no prejudice in fact to the petitioner. *See State v. James*, 305 So. 2d 514, 518 (La. 1974) (noting that an objection prior to trial or at trial could have secured an amendment to the charging document). *See also Tarver v. Cain*, 2007 WL 677171, *10 (W.D. La. Feb. 2, 2007) (finding no prejudice resulting from an attorney's failure to challenge an indictment because the prosecution simply could have "amended the indictments to cure any alleged defects").

3. Failure to Investigate

Petitioner claims that his counsel failed to conduct a reasonable investigation and proffer evidence to show that his client was prejudiced by the trial court's denial of his motion for a change of venue. [doc. # 1-1, p. 54]. Petitioner contends that his trial counsel, Carl D. Walker, moved to have the venue of the trial changed due to the negative pre-trial publicity and introduced a single newspaper article into evidence. *Id.* A review of the record reflects that the trial judge agreed to place the article in the record and surveyed potential jurors to see if they had read the article. [doc. # 12-3, p. 2]. Petitioner argues that his defense counsel did not object or move for a mistrial when the trial court determined that a fair and impartial trial could be

24

obtained in the parish. [doc. # 1-1, p. 54]. Additionally, Petitioner complains that his defense counsel failed to investigate whether there were other news articles that may be prejudicial to Petitioner. *Id.* at 55.

The pertinent statute governing venue, LA. C. CR. P. art 622, states, in relevant part: "In deciding whether to grant a change of venue the court shall consider whether the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial." Moreover, in order to prevail, a post-conviction petitioner must allege specific facts in support of his claim that the venue was improper. *See Smith v. Puckett*, 907 F.2d 581 (5th Cir. 1990). What is more, in reviewing a *habeas* petitioner's argument that counsel was ineffective for failing to move for a change of venue, the Fifth Circuit, in *Sharp v. Johnson*, 107 F.3d 282, 287 (5th Cir. 1997), considered "the deference customarily owed to the tactical decisions of trial counsel in jury selection" as a factor to be considered in the analysis.

Here, Petitioner claims that "defense counsel did nothing but introduce the motion for change of venue without any rational argument to support his cause." [doc. # 1-1, p. 60]. Petitioner states that attached to his petition are "newspaper articles that counsel knew about, but failed to conduct a reasonable investigation into." *Id.* at 55. However, Petitioner did not attach any newspaper articles to his petition or any other filing in this matter. Additionally, Petitioner does not present any evidence that the introduction of additional newspaper articles into the record would change the outcome of his disposition. Petitioner has failed to allege specific facts to support that his claim was improper. Given the highly deferential scrutiny accorded to counsel's tactical decisions, the Court cannot conclude that counsel's performance was deficient.

Petitioner also asserts that his trial counsel's performance was deficient because he failed

to investigate into any additional newspaper articles. [doc. 1-1, p. 55]. When assessing the

reasonableness of an attorney's investigation, a court must "consider not only the quantum of

evidence already known to counsel, but also whether the known evidence would lead a

reasonable attorney to investigate further." *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005)

(*quoting Wiggins v. Smith*, 539 U.S. 510, 521 (2003)). "Counsel is not required to pursue every

path until it bears fruit or until all conceivable hope withers." *Lovett v. Florida*, 627 F.2d 706,

708 (5th Cir. 1980). A petitioner must allege with specificity what the investigation would have

revealed and how it would have changed the outcome of the trial.  *Miller*, 420 F.3d at 361.

"[W]ithout a specific, affirmative showing of what the missing evidence or testimony would

have been, a habeas court cannot even begin to apply *Strickland's* standards because it is very

difficult to assess whether counsel's performance was deficient, and nearly impossible to

determine whether the petitioner was prejudiced by any deficiencies in counsel's performance."

*Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994).

Here, Petitioner alleges that trial counsel would have uncovered additional newspaper

articles accusing him of murder in an unrelated incident. [doc. # 1-1, p. 55]. Petitioner, however,

offers no evidence indicating what prejudicial material the articles contained or how the articles

would prove a community prejudice existed. As Petitioner notes, trial counsel filed a motion to

change venue and the trial court examined the potential jurors to ensure no prejudice existed.

Further, Petitioner has not provided the court with any other newspaper articles or any other type

of evidence that would have prejudiced the jury pool. Given the lack of evidence provided by

Wilson, the Court cannot infer that there is a reasonable probability that, had counsel further

investigated into additional newspaper articles, the jury would have reached a contrary result.

Thus, the Court cannot conclude, from Petitioner's unsupported claim, that counsel's

performance was deficient.

    4. Failure to Challenge Planted Evidence

    In Petitioner's last claim, he asserts that his trial counsel was deficient for failing to

challenge the introduction of coins. As noted in Section II.B., the appellate court gave detailed

and persuasive written reasons as to why the coins were in fact admissible and the alleged

violations did not rise to the level of a constitutional violation. *See Wilson*, 26 So. 3d at 217.

Counsel cannot be ineffective for failing to raise a meritless claim. *Hargett*, 61 F.3d at 415 n.5.

Moreover, the Petitioner has been unable to demonstrate, even if the coins were not properly

admitted, that the introduction of the coins prejudiced him. Therefore, Petitioner's final claim of

ineffective assistance of counsel lacks merit, both because he has failed to show that his

attorney's actions fell outside the wide range of professionally competent assistance and because

he is unable to show that the prosecution's introduction of the coins caused him any actual

prejudice. Thus, these claims should be DENIED.

## Conclusion

    For the reasons stated above, **IT IS RECOMMENDED** that the Petition for writ of

*habeas corpus* filed by Petitioner Anthony Glen Wilson, [doc. # 1], be **DENIED and**

**DISMISSED WITH PREJUDICE**.

    Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by

this Recommendation have **fourteen (14) days** from service of this Report and Recommendation

to file specific, written objections with the Clerk of Court. A party may respond to another

party's objections within **fourteen (14) days** after being served with a copy of any objections or

response to the District Judge at the time of filing. A courtesy copy of any objection or response

or request for extension of time shall be furnished to the District Judge at the time of filing.

Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

In Chambers, Monroe, Louisiana, this 15th day of June, 2016.

_____

**KAREN L. HAYES**
**UNITED STATES MAGISTRATE JUDGE**